May it please the Court, my name is Cecilia Cordova, Counsel for Appellant Carole Coppinger-Martin. I have with me here Mr. George Hunter, my co-counsel and colleague. I would like to reserve three minutes for my rebuttal time. The Administrative Review Board's decision to dismiss Ms. Coppinger-Martin's complaint was wrong for several reasons, five of which I'd like to speak about this morning. First, it applied the regulatory two-prong test as if it were a one-prong test regarding the time for filing under Sarbanes-Oxley. Two, Ms. Coppinger-Martin had no reason to believe that she had been discriminated against in violation of the Sarbanes-Oxley. Let me ask you this, Counsel. Although the decision to terminate her was communicated on November 14, 2005 because it was delayed a bit, the last day that she was at work was April 21, 2006. Yes. Do you agree that at least at that point she knew about the decision to terminate? I do agree. In fact, under 29 CFR 1980.103D, which states the rule for time for filing, it states it in two parts. It says that within 90 days, one, that the adverse employment action has occurred, which is defined as the decision is both made and communicated to the employee. And this is what you were speaking of, maybe mid-October, November 2005, and then again April 21. But then it goes on, comma, so I look at that as the second part of the test. The employee believes that she has been discriminated against under the Sarbanes-Oxley Act. Then she may file her claim. So from your perspective, whether you call it equitable tolling or equitable estoppel, if she did not become aware that someone had taken her place until, say, five years later, that would be okay? It's not the fact that whether or not she was aware that someone had replaced her. It's the fact that there were facts that were misrepresented that were operative to support her cause of action. And what exactly did she not know by April 21, 2006? By April 21, 2006, still at that time, and even up through May or June 2006, she was under the impression, and Nordstrom was representing, that her position had been terminated because of the elimination of her job duties. And who told her that? What authorized person from Nordstrom told her that? Mr. Little, who was her immediate supervisor. And, in fact, in the declarations, I believe at the ALJ level, and I believe it's at the ALJ level, Mr. Mike Richardson also stated in his declaration that there were no duties or no positions available for Ms. Coppinger-Martin that were suited for her specific technical expertise. And, in fact, there is a letter also from Nordstrom's counsel, I believe in May or June, to Ms. Coppinger-Martin's counsel that, again, reiterates that same sentiment that states that her position had eliminated, there were no positions available for her particular skill set. She already had an attorney by the time of her last day of work, right? I'm not sure exactly when she had an attorney, but I do believe, Your Honor, that you were referring to the allegation that by June 2006, that her counsel had met with Nordstrom's counsel to discuss potential claims. And, now, this is misleading for a couple of reasons. First of all, under the Sarbanes-Oxley analytical framework, we don't look at post-SEC actions of the employer. In fact, she met with her counsel and her counsel met with Nordstrom's counsel to discuss claims as a shareholder as opposed to an employee. Shareholder claims aren't available under Sarbanes-Oxley. And if you note in the record, it states that her concerns were regarding the 10-K, which came out in, I believe, March of 2006, and then also the annual shareholder meeting, which was, I believe, May 23, 2006, in which it was not disclosed to the shareholders, one, in March on 10-K, that Nordstrom was not compliant with the PCI guidelines and also at the annual shareholder meeting it was not disclosed that her position had been eliminated, which was a strategic, it was IT strategic planning, and that her duties had been eliminated, which she thought was a misrepresentation to the shareholders. Shall I go on? Okay. The third reason that I believe that the Administrative Review Board's decision to dismiss Ms. Coppinger-Martin's claim was wrong is because Nordstrom's misrepresentation concealed operative facts, as I discussed earlier, to support her cause of action. Under the statutory framework, OSHA would have denied her right to an investigation, and if she were able to make it to the ALJ level, she would have been denied the right to a hearing. The fourth reason is because the Administrative Review Board applied the discovery rule, rather than equitable estoppel, which Ms. Coppinger-Martin claims that made her filing timely. And then fifth, the Administrative Review Board relied almost exclusively on an argument, which Ms. Coppinger-Martin did not make, that it stated that she relied upon evidence of retaliatory motive, where in fact both the ALJ and the Administrative Review Board found that Ms. Coppinger-Martin's claim that her filing was timely was based upon her argument that Nordstrom had misrepresented a fact that was operative to support her cause of action, and that was that she was misled to believe that her duties had been eliminated. Now according to this court, equitable estoppel focuses on employer intentional or foreseeable behavior, which lulls the employee into delaying her filing of a claim within the statutory period. If the employer misrepresents or conceals a fact necessary to support the employee's cause of action, then the statute of limitations is told. But concealment of motive has not been found either by our court or any other circuit to at least sustain any equitable estoppel. Do you agree with that? I do agree with you. So your argument is really based upon equitable tolling then? No, it's on equitable estoppel because we're arguing that they misrepresented the reason, an operative reason, a necessary reason to support her cause of action, because she believed that her... That's the concealment of motive, is it not? You can look at it in that way, but really what it was is because she was misled to believe that her duties had been eliminated, that would have been an independent reason to be able to actually substantiate the termination of her duties regardless of her... But I guess what I'm struggling with, counsel, is that this is a very generous statute. It's like a Title VII kind of thing. All she really... She had enough information, certainly by April of 2006, to allege a prima facie case, did she not? She didn't have to wait for anything more? Actually, she did under the regulatory analytical framework because under 29 CFR 1980.104C, if she, in fact, were able to assert a prima facie case, all North Germany do is assert a reasonable, legitimate non-discriminatory reason. Then she shows pretext, but by that point she has filed the complaint. She's passed the statute of limitations issue, and she gets into discovery, and then she goes through all of that. In this case, arguably, she had all of the information she needed to know, and she even went to an attorney. That's almost a given there that by the time she goes to an attorney, she thinks something's wrong. I guess I'm struggling with why she could not have filed a boilerplate garden variety complaint alleging that she was part of a protected category and a group and that they discriminated against her, and then you go from there and see what discovery shows. You gave me three questions, so if you would allow me to answer those, if I can remember them because I didn't write them down. First, you asked why, because she knew that she was able to assert a prima facie claim, did she not go ahead and go forward? Once North Germany was able to assert a legitimate non-discriminatory reason, that appears to be, she must not only show that it's pretextual, but she must show it with specific evidence. If she was unable to show specific evidence that this was pretextual, then she would have lost under 29 CFR 1980.104C and also 29 CFR 1980.109A. Both of those levels she would have lost because it requires specific evidence. For Nordstrom, in order to overcome her prima facie case, they merely had the burden of production, not persuasion. The burden really is on the employee throughout this analytical framework. You might think that the Serena Susslie statute is fair, but it was rushed through rather quickly, and unfortunately the burden is on the very people that this act was designed to protect. There are a few little quirks. It was the Department of Labor who actually promulgated the regulations that were designed to interpret the statute, and it was their regulation that states that the time for filing is when the adverse employment action occurs and when the employee believes that she has been discriminated against. Because this Commissioner Marchant was led to believe that her job duties had been eliminated, she had no reason to believe that she had been discriminated against, therefore would not have met that second prong of the regulation for the time for filing in order for her to be able to sustain a cause of action. Thank you, Counsel. We'll give you some time for rebuttal. Thanks so much. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Seema Patel for the United States. The issue in this case is straightforward. Did the Administrative Review Board abuse its discretion in finding that Coppinger-Martin's untimely complaint, which was filed more than 170 days after her adverse action, was subject to equitable modification? As the Board correctly concluded, the sole reason that Coppinger-Martin offered in support of her claim, which was concealment of the reason for the adverse action, did not rise to the level sufficient to sustain the equitable modification claim. The facts are straightforward in this case. Coppinger-Martin had been with Nordstrom for five years. She had received positive performance evaluations throughout her tenure. She engaged in protected activity in mid-summer 2005 and shortly thereafter received an unfavorable evaluation. The supplemental excerpts of record show at pages 2 and 5 this evidence. Shortly after receiving the unfavorable evaluation, she was terminated. Even assuming that the date of termination was not final until April 21, 2006, the record is clear that her complaint was untimely and there was no active deception, improper purpose, or any reason above and beyond the wrongdoing upon which her equitable modification claim could survive. And thus, the Board concluded correctly that her complaint was untimely. The Board addressed a couple of cases, the Ninth Circuit's cases in Lukovsky and Guerrero. Lukovsky is a fairly recent case, 2008, in which this court addressed for the first time the issue of equitable modification in this sort of factual circumstance. And based on those cases, the Board found that the complaint was untimely. Your Honor, Judge Smith had asked, why didn't she file the claim if she had enough information? And quite frankly, that is our question as well. And because there was no sufficient answer, not before the administrative law judge and not before the Board, the Board did dismiss her complaint. Isn't it fair to say that even though the Title VII claims are, of course, different under the statute, this is a McDonnell-Douglas type analysis, is it not? Correct. So would you say that most of the, at least based on your experience, have you seen that most of these McDonnell-Douglas type analogies or claims, rather, are made before discovery occurs and a lot of the information that ultimately comes out is known to exist? There's just a claim, hey, I got fired. I had all these good reviews before, and I don't understand why, but I did say something that I think triggered this. Isn't that enough? Isn't that what usually happens? Indeed, that is. And you mentioned the garden variety of complaints, and indeed the Department of Labor does receive a garden variety, but it is for that reason. The Act and the regulations are designed to protect employees like Coppinger Martin. However, as Congress has stated, the statutes of limitations also exist to protect important interests. So to answer your question, yes, there was sufficient information. Last year in the Van Asdale case in which Judge Thomas participated, I'm sorry, you did not participate, you were on the panel, but you did participate. In the Van Asdale case, this court addressed for the first time the substantive Sarbanes-Oxley elements, and in that case the Ninth Circuit clearly found that timing alone is sufficient to, is a sufficient inference upon which employees can bring a claim alleging causation. So, you know, we do submit that, yes, she had plenty of information upon which to bring this case, and indeed we see several cases in which with far less information petitioners to bring claims. I neglected to introduce the counsel for intervener, Mr. Ryan McBride, here for Nordstrom, and I would like to divide my time and give him some time. Very good. Thanks for the questions. All right, Mr. McBride. Thank you, Your Honors, for allowing us to split our time and giving me a chance to speak. I guess I see this case as already settled based on this court's precedent in Lukowski and Santa Maria. I mean, the argument for equitable modification in those cases was exactly the same as the argument that Ms. Coppinger-Martin makes here, and that is the employer's stated reason for the adverse employment decision was false, was a misrepresentation, and in both of those cases the court rejected equitable modification because that allegation of misrepresentation, of concealment, does not meet the standard of above and beyond the substance of the underlying claim. Pretextual justification just doesn't cut it, and this case is no different. I think when we think about equitable tolling or estoppel or even the discovery rule, the key issue is whether or not the plaintiff has enough information to get his or her foot in the door. It's not whether or not he or she has all the information to prove his or her case, and I think that's the point you were making earlier, Judge Smith. And one point that I think slipped through the briefs that I'd like to just emphasize, and it was mentioned in the Santa Maria case and it's mentioned in some of the other circuit decisions that deal with this issue, that the threshold is exceedingly low in an administrative action especially. We don't even have a Rule 11 concern for sort of a pre-filing investigation in those cases. And I think when we're talking about equitable estoppel or fraudulent concealment, I think the key critical issue is the alleged concealment. Does it go to any of the things the employee, the plaintiff, needs to show or allege in order to file that complaint? And in this case, and I think the Van Asdale case sets it out very well, and indeed Ms. Coppinger-Martin's own complaint with OSHA establishes that at the time of her termination, April 21st, if that's the date, she knew all of the prima facie elements, and the alleged concealment didn't go cloud, defeat any of those prima facie elements. She claims that she engaged in protected activity. She claims that Nordstrom knew she had engaged in protected activity. And she claims that on the heels of that protected activity, she suffered her first negative performance evaluation and immediately thereafter was terminated. Those are the prima facie elements for a whistleblower case of this kind. She knew all of that the day she was fired, if not before. That's enough to initiate a claim. The question is not whether she could prove it down the road, but whether she had enough information to file it, and she did. And for those reasons, we'd ask that the decision of the ARB be affirmed. Any further questions? Thank you, counsel. We'll give you two minutes for rebuttal. I'll try quickly to address these. I'd like to state quickly that the Underman-Asdale case, in which this court first laid out the analytical framework for serving as Oxley, did not get to the point that I'm speaking of, where the employer actually asserts a legitimate nondiscriminatory reason. It didn't go beyond that to determine that specific evidence was required. Regarding was there, is all evidence required before you file, no. And we agree with that. But sufficient facts need to be acquired before you can file your claim. And, in fact, equitable estoppel is applied by this court when there is a misrepresentation or for some reason the employer's actions lull the employee into not realizing sufficient facts are necessary to support the claim. So we agree with you there. I understand correctly that Ms. Coppenhagen-Martin retained counsel on May 22, 2006? I believe it was on or around that date. And I believe that, Your Honor, that you are speaking about retention of counsel under the equitable modification rules. This court has ruled that under equitable tolling, if you retain counsel, then you have a constructive knowledge of your rights because equitable tolling deals with ignorance of the law. However, equitable estoppel deals with the conduct of the employer, and this court has not held that retention of counsel has... Right, I realize that they're different. I was just dealing with that one element in terms of equitable tolling. But, again, I must state that even counsel was not aware because if counsel was not aware of the facts until July 19th that there were actually employees performing the duties... But for purposes of what we were talking about before, Your client certainly had enough information no later than approximately almost a month and a day after her final termination, she was on the doorstep of a lawyer. And she certainly was concerned that she had been done wrong by, to use the common vernacular. That's enough. That's all she needs to file a complaint. She doesn't have to have all of the details. Do you disagree with that? I do disagree with that, Your Honor, because her complaint there was she was trying to negotiate to get back in. She thought that there was a shareholder claim because Norshin failed to... We can't even get into what the conversations were with her counsel. That, of course, is protected by attorney-client privilege. But for purposes of our analysis, the fact that she went to a lawyer, one common sense would suggest that she either was seeking a remedy, whatever it might have been, or that she felt she'd been injured contrary to the law. Isn't that a fair assumption? It's a fair assumption, but it wouldn't support a Sarbanes-Oxley claim under the analytical framework. Okay. Thank you. Thank you, Your Honor. Thank you, counsel. Thank you all for your arguments today, and the case just heard will be submitted for decision. I want to thank Judge Smith for a nice week. We've had to have been on the bench every day together. I want to thank Stacy and your staff for doing such a fine job for us. And with that, we will be in recess.
judges: Collins, Thomas, Smith M.